Good morning, may it please the court. My name is Karen Lindholt and I am here on behalf of the appellant Martin Murillo-Barriga. Present with me is Dave Partovi who is my co-counsel and he is here on behalf of Magical Galvan. I am going to, excuse me, I just want to see if you were going to split your time. Yes your honor if I could, we will divide it ten minutes each and I would ask for two issues. Three appellate issues were raised. I will be addressing two issues today. The first one is the lower court's abuse of discretion in admitting exhibit 325B which is ER 45. This chart allegedly shows a conspiracy. This chart, the court makes improper implications, it suggests things, and it also mischaracterizes the evidence. There are, on this chart, there are eight individuals listed although in the underlying conspiracy there are only four co-defendants. Let me make sure if I understand this. You're talking about Mr. Castellan Miramontes, is that correct? No I know that. I'm just saying the information that was obtained from his records, is that correct? That's one section of my argument, yes. Okay. Let's talk about that because even though Castellan Miramontes didn't testify, and I think that's one of the issues that you're raising, to the specific numbers saved in his phone under Martin and Angel, is that right? Yes. I'm just trying to figure out how the district court could have used its discretion in admitting the telephone chart exhibit when those numbers were in the forensic report, unless I'm not understanding this context, contents, is that not correct? Yes. And defense counsel tried to move to the further admission twice. The issue here is if you look at on the exhibit, which I am referring to here, on the substance, the 323 number, it says that my client Maria Briga had a certain number of contacts with Castellan Miramontes, and therefore it showed evidence of conspiracy. Well first of all, Castellan Miramontes isn't a defendant in the conspiracy. But be that as it may, this number... Why does that matter counsel? Why does it matter who's the defendant? Very frequently in a conspiracy, many people may have been members who weren't charged because for one reason or another, sometimes being a snitch, sometimes because their conduct wasn't as serious, all kinds of reasons. Sometimes because they couldn't find them. Sure. The prosecution didn't charge them. I agree with Your Honor, although the fact is there are four named co-defendants here, and I'm sure Your Honor would agree that the government had to prove some connection with my client with the other three named co-defendants. And my point is that Castellan Miramontes was not a named co-defendant. I understand, you know, yes he could be an unnamed member of the conspiracy. But my point is, when the government argues harmless error with the admission of this chart, my point is there is not enough other evidence to convict my client of the conspiracy. But back to the question. So this number 323, Mr. Miramontes Castellan testified that he on occasion called this 323 number when looking for Angel. He reached other people there. But on the chart that the jury got, they show that this 323 number, it connected Martine four times to another number, and then this same number connected 33 times to another alleged member of this larger, to a non-member of the conspiracy. My point is it's misleading, it's misrepresentative, and the four times that this chart attributes to my client did not exist. Because Castellan Miramontes did not say, I spoke to Maria Briga four times on that cell phone. He said he occasionally. So it is misrepresentative. And So what's your objection? I'm trying to figure, understand. What's your point? Well, my point is there are two issues. There are two problems with the chart. One, if Your it contains eight people, and the top spot is Martine Maria Briga. So the jury gets this chart, and all of a sudden, who's Maria Briga? Well, he must be the leader, because guess what? He's up top. It's the same concept in this representative photo lineup. He, just the mere fact that he's put at the top of this chart is problematic. In addition, these other people are not relevant. They're not charged in the conspiracy, but yet there's hundreds of phone calls referenced here, and a jury assumes that something's going on here, Hankey, and something involves Mr. Maria Briga. And the fact that Was there other evidence? Was there other evidence in the materials underlying the chart that Maria Briga was, in fact, the top guy in the conspiracy? No. Not with all these people, absolutely not. Not with these eight people, no. And in fact, I'll move on to the sufficiency of the evidence, which is my other argument. I'm sorry, Your Honor, if I didn't confuse my own argument. No, no, no. I'm not following you, because it just seems like the summary charts, I think you know what the rule is there. The court is given a great deal of discretion on whether to admit these summary charts, especially when you have a case with this many defendants and all the evidence here. I just don't see, and I want you to try to tell me what was problematic and then we can go on to the sufficiency of the evidence if you want, but I just didn't requires that the underlying evidence be otherwise admissible. And my point is that the contacts for that number 323 was not otherwise admissible and was not in evidence. There was nothing in evidence. Answer my question, because it was referred to as the forensic document. No. If Your Honor looks, it says 323. It says Martine Maria Briga. There's a connection. User per Castrolone. So that means that Castrolone testified that Martine used that number 323. And what I'm saying is what the evidence was, Mr. Castrolone said he occasionally reached Martine there, but he also reached Angel there, and he also reached others there. So to conclude this is erroneous, and that wasn't what the evidence stated. Okay. Let's get to the sufficiency of the evidence. Thank you. Why wouldn't that be like if somebody calls me on my cell phone to talk to my wife because they couldn't get a hold of her, or they call her on her cell phone to talk to me because they couldn't get a hold of me? Sure. Well, I would agree. And so for me to say I spoke with the judge 20 times when in But yet there's a chart that says I spoke to the judge 20 times. That's in its representation of the evidence. If it was I called the judge 20 times rather than I spoke to the judge 20 times, it would be fine. Sometimes when you call people, my point was you know that people share living quarters, so you call them on their shared phone. Well, and it gets down to judge cell phone. Or you call somebody else's cell phone that you know lives with them or is with them a lot. So I guess does the law say that if you and your wife utilize the same phone that you are responsible for everything she does? Because that's what happens here. By giving this chart to the jury, it was told that Martine Maria Briga was everything. You overstated that. If you're trying to show that somebody is in touch with me a lot and you show some calls from that person to me and some calls from that person to my wife's cell phone and the person testifies that I was trying to get a hold of him and I tried to see if his wife's cell phone, if she picked up. That's what you're talking about and it seems reasonable. Okay. I mean they call me on my cell phone, I'm driving, she's in the passenger seat so she answers and I don't. What's unreasonable about that? Again, the testimony that you will look, that you will find if you look in the ER is that Fraxie Miramontes-Castrolone testified that he occasionally spoke with Martine at this 323-232-8222 number. That's different from the way the chart represents what the testimony. So my position on the substance is the substance is different from the way the chart presents it's misleading, it's misrepresenting. But moreover, to give a jury a chart with people who aren't involved in the four-person indictment is also ... Let's go to the sufficiency because how does not the ex-girlfriend or the current girlfriend hit her testimony? How's that not just completely damning of your client? Well, Your Honor, these are tough cases. I understand. I'm glad to ... I don't envy you here. So Amanda Cawthron. Amanda Cawthron, the ex-girlfriend, testified on direct that she was no longer in a relationship with Maria Briga by the spring of 2010. The indictment says the alleged conspiracy starts in around spring of 2010. So the time frame isn't issued there. However, more importantly, Amanda Cawthron testified that she did not know Rene Gomez, co-defendant. She did not know Isidro Madrigal Galvan, co-defendant. Nor did she know Brent Johnson. So I'm not saying my client was an angel, and I'm not saying at one point he wasn't involved in drugs and maybe dealing drugs. What I'm saying is he was not dealing drugs in the conspiracy as charged. There's no evidence ... I don't understand that. I don't understand why, when you get to the sufficiency argument, the ex-girlfriend isn't enough. She testified she saw him selling drugs from his house. She also testified she saw him repackaging large amounts of meth into smaller bags, which a jury might use to infer going from wholesale to retailer, giving them to smaller dealers. And she testified that Murillo Barriga was the boss. The Jackson v. Virginia test is so liberal. If any reasonable juror could believe beyond a reasonable doubt, why isn't that enough? I mean, she may not be very credible, but the jury's entitled to believe her. Because these are unconnected conspiracies, Your Honor. The government has some obligation to prove that there was more ... that there was one conspiracy here. The government did not prove that each of the four defendants, Murillo Barriga, Madrigal-Galvan, Gomez, and Johnson, knew the scope of the conspiracy involving this and that they took acts in progress. I can't deny what Ms. Coughran testified to, but it was pre-2010, and it didn't involve the other co-defendants. So then we have the other ... I think so, yes. That's fine. Good morning, Your Honor. David Partovy on behalf of Isidro Madrigal-Galvan. Your Honor, the issue I'd like to address is the sufficiency of the evidence with regard to the storage unit specifically. I've raised two issues. I think the first has already been addressed by co-counsel, and that being the admissibility of 325B. With regard to the connection made between Mr. Madrigal-Galvan and that storage unit, I think it's reasonable to say there was none. What you have to conclude in order to say that there was really any evidence, much less sufficient evidence, to prove beyond a reasonable doubt that Mr. Madrigal-Galvan was individually connected to that storage unit is that because his wife was connected to it, he was therefore connected to it. And I believe that that logical leap is not supported by the evidence. And in fact, if you read closely the government's position, I think that it's illustrated. And specifically on page 39 of the answering brief, the government indicates Gomez personally rented the storage unit. Gomez was the only authorized user. The contract and the key were found in the shared residence. Then the sentence next begins, thus, the defendant and Gomez collectively had exclusive control over the unit. That thus does not follow logically from the evidence that connects Gomez to the storage unit. Is it a basis? Counsel, I agree with you that the thus is a real stretch. However, under the liberal sufficiency of evidence standard, I don't understand why it isn't enough for the inference that his wife had previously rented a hotel room that Madrigal-Galvan used for a drug deal and combined with that there were car titles in there and there was evidence that Madrigal-Galvan took car titles as collateral for drugs. It's also important, Your Honor, that there was another car title that was never connected with Mr. Madrigal-Galvan or anybody. We're not talking about whether the evidence is compelling. We're just talking about whether it's sufficient under the Jackson standard. I would say two things to that, Your Honor. First of all, that's the reason that Mr. Madrigal-Galvan is not here contesting the sufficiency of the evidence of the conspiracy. We recognize that there was sufficient evidence based on the fact that his wife rented the hotel room, based on the fact that she drove, etc. There are defenses, but with regard to the liberal test, I agree. When you step out of that to the storage unit, this is different than a home. It's different than a backpack that somebody's carrying. It's different than a car that somebody's driving or a registered owner of. This is a separate storage unit that belongs to a different person, whether it's a company or something of that nature. This is rented, and it's not a residence. And there are other cases that are cited in the briefs. I believe it's the unpublished Muhammad case where the defendant was residing or there was significant evidence that he was residing in the storage unit. That's not the case here. This is somebody else's property that's being rented by someone other than my client. You're explaining Ms. Gomez? No. Belonging to the storage facility. In other words, Ms. Gomez rented it from somebody else. So I believe that it's reasonable, under the Jackson Standard, to impute knowledge of the contents to her. But when you then go that next step to Mr. Madrigal-Galvan, I believe you need some evidence in addition to the fact that they're simply related by marriage. For example, the government had Related by marriage. She and he did a lot of activities together in furtherance of the conspiracy. I mean, numerous. I'm just trying to figure out why isn't that enough to connect him based on everything that she did in terms of assisting him in distributing the methamphetamine and used her name to register vehicles or rent motel rooms. And then you have Mr. Madrigal-Galvan sold carpeted speaker boxes like the speaker box in the storage unit where the methamphetamine and handguns were concealed. And you have, I don't think, any evidence that was presented to suggest that she would have rented the storage unit. Isn't that enough? Well, I think Judge McGee is raising the question. Let me ask it another way. Was there like a Pinkerton instruction in this case? No, Your Honor. Which I think would support, Pinkerton instruction would support, you know, drawing all those inferences, right? You know, one conspirator can be guilty of the substantive acts of another conspirator, you know, given if you meet the Pinkerton requirements. There was no such instruction in this case, at least that applied to these counts, 22 and 24? That's correct, Your Honor, and I'm specifically not answering that question. I don't believe so because there really wasn't. Pinkerton liability was never an issue in this case. So I believe the jury did not receive, I know the jury did not receive that instruction. This is the issue. There is a very liberal standard here, obviously. However, it's a liberal standard that must be proven beyond a reasonable doubt. It's still a criminal case. My client was 20 years old and he was sentenced to 19 years in prison. And there is other case law from this court with regard to storage units. And the sufficiency in those cases, specifically in Sitton, they showed that he paid the rent, that he had access to the unit, that he was seen accessing the unit with a co-conspirator, that he was seen by the people at the storage unit, moving items from the storage unit into the co-conspirator's vehicle. By the way, by the way, you know, there are two counts involving storage, you know, right? One was the drugs. Yes, Your Honor. And the other count was the firearm. Correct. And the firearm charge, you know, was not just possession, but... In furtherance. The in furtherance, right? Yes, Your Honor. Now, when you're charging this, when you're challenging the sufficiency of the evidence on the firearm charge, are you also challenging the in furtherance requirement? In other words, was there evidence that it was possessed, whoever possessed it, in furtherance of the conspiracy? Not that firearm. The government will tell you, and they're correct, that there was testimony that my client possessed firearms on occasion. And that he possessed those firearms while the drug activity. For example, there was some testimony from Brent Johnson that he had a firearm in the hotel room. So there's that. But there is no testimony that he had a silver revolver or a bulldog pot for this firearm. The government had the opportunity to seek additional evidence in this case. They could have done fingerprints on everything. They could have done DNA, fiber. They could have gotten cameras. I mean, they searched this within a day or two of this place being accessed, and they didn't seek to get any of the video which the witness testified was available. So it's the government's burden to prove beyond a reasonable doubt. And although this court's review standard is liberal, we still have to get to that beyond a reasonable doubt standard. What I'm specifically asking the court to do with regard to the storage unit is to find that there is insufficient evidence to support the 924C, the furtherance of, and the intent to distribute, which were the two substantive counts. I'm also asking the court to dismiss those two counts from the bench as they're insufficient evidence and to thereafter remand this case back to the district court for resentencing without the weight of the drugs that were found in that storage unit. Your Honors, I see there's 39 seconds left. I don't need any rebuttal. I think my point's been made. What I would just finally say is this. In a storage unit where you don't live, where there's no dominion and control paperwork, I know the government will point to some of these car titles, but they were Nate Gomez's car titles. There's somebody else's car titles. There's no mail from Mr. Madrigal-Galvan. There's no dominion and control paperwork. And so without something other than the bare presumption that because his wife is involved, he is also involved, I think there is insufficient evidence with regard to the storage unit. Again, we concede because I have not appealed the sufficiency of the evidence for the conspiracy, but when it comes to this particular storage unit, the district court founded a close call. I believe this court needs to understand that though the standard is liberal, we have to get beyond a reasonable doubt. And in this case, there were 16 counts against my client. I think that the jury started finding him guilty, and once they got into double digits, they just kept going. This standard of review exists for a reason. Sometimes juries get it wrong, and in this particular case, there's just not sufficient evidence. Thanks, Your Honors. Thank you. Good morning. May it please the court? Tim Holmes from the U.S. Attorney's Office in Spokane on behalf of the government. Why don't we start where he left off? The dominion and control charge against Mr. Madrigal. Well, as I understand it, the defense is challenging the nexus of the defendant to the storage unit. The jury in this case had an opportunity to hear testimony about how the conspiracy operated, specifically with regard to Mr. Madrigal-Galvan and his wife, Renee Gomez. They had an opportunity to hear that Mr. Madrigal-Galvan was the person who was out selling the drugs. What was the evidence that he had dominion and control over the storage unit? Well, part of it is the nature of the conspiracy and how the defendant and Renee Gomez, what their roles were within the conspiracy. It was the defendant, Madrigal-Galvan, that was selling drugs. It was him who- Just a minute now. Your case is constructive possession, right? It has to be, isn't it? That Madrigal had constructive possession of the storage unit and everything in it? Isn't that your case? Yes, Your Honor. All right. Now, at the same time, as counsel read from your brief, you make the assertion that, therefore, they had joint and constructive possession. Isn't that your assertion in your brief? There's no such thing as joint and constructive. I think the statement was exclusive possession. All right. Exclusive. You can't have joint and exclusive possession at the same time. It's either exclusive or it's joint. You're conflating the two. I mean, that's your case. If that's your case, you have to lose, if that's all you have. In other words, you're saying joint is the same as exclusive. Our cases don't say that, do they? Name me a case that says joint is the same as exclusive. Can you cite a case that says that? No, Your Honor. But I can say that the government's theory was based upon the joint possession and on the substantial connections between the defendants. I agree. It's based on the joint possession. But then, because our cases say, if you're arguing constructive possession, you have to show exclusive possession. Do you agree our case to say that? Or can you cite me a case that says something else? In other words, the case that says you do not have to show exclusive possession in order to make a constructive possession case. Is there a case that says that? I don't think so. I don't think so. I think my point was that Renee Gomez operated in the conspiracy as innocent. I'm not questioning that she had a possession, a control. But her role in the conspiracy was supportive in the sense that she obtained items in her name. Well, that's fine. And he's guilty of the conspiracy. He's not contesting that. We're talking about possession of the weapon and the drugs in the storage unit. But if she obtained the unit for him, which is a reasonable... There's no evidence of that. How do we know that? Where's the evidence? It's an inference for the jury to draw based upon the nature of the conspiracy, how it operated. She had a supportive... I'm not sure I understand. Are you just saying that because she's the wife, whatever she does must be for the benefit of her husband? Or are you saying there's some independent evidence that he manipulated her and told her to get the storage locker for him? Or something else? I don't understand exactly what you're saying supports the proposition that he had dominion and control over the storage unit. That he had substantial contacts to the storage unit, because... What substantial contact? What I'm saying is the way the conspiracy operated was for her to... Not just because they were married, but the way the conspiracy operated was she assisted him by placing things in her name. And there was testimony from the agent in the case or the case officer, the detective, who testified as an expert that this was a method of operation of a drug conspiracy of this type, and that women were frequently used because they were less suspicious, and they were used to divert attention away from the persons who were actually the drugs to obtain things in their name. So she rented a hotel room. She rented the storage unit. Those things are consistent. And then when you look at what was in the storage unit, those things are more consistent with the defendant, Mr. Madrigal-Galvan's possession, because those were the kinds of things that people said he had. You mean like guns? Guns and stereo equipment. There was very little in the storage unit. He was the one selling drugs, so it makes sense that he would be the one maintaining it as a place to hold his inventory, which a jury could, I believe, reasonably have inferred. Witnesses... Do we know that it's not actually her that's the dealer, and he occasionally does something for her in the course of her cooperating co-defendants like Mr. Brent Johnson? What's the evidence that these guns in the storage unit meet the infuriance requirement? Just the proximity that they're together in the same container. Just because they're locked in the storage unit with the drugs? No, they're inside the speaker cabinet. The screwdriver for the storage unit? Yes, Your Honor, but it goes beyond that. I know, it makes it even less likely that it's infuriating, doesn't it? Well, there's a box inside this speaker cabinet, and that box contains assets of the conspiracy. Money, drugs, and these firearms, along with these vehicle titles. Well, my question is, what shows that that gun was used by Madrigal in furtherance? It's as I stated, Your Honor. I don't have evidence beyond the fact that there's proximity in this case. The gun was found in the box, in the speaker, in the storage unit? Yes, and there was testimony that Madrigal Galban frequently carried a handgun and had possession of other firearms. No evidence that he ever carried this gun? No, Your Honor. Well, not direct evidence. I don't have a witness who said, I recognize that gun. What's the indirect evidence, or the circumstantial evidence, that he ever carried this gun to meet the in-furtherance requirement? Well, all I can say is, because it's there, it had to have gotten there in some manner. The gun is there to meet the in-furtherance requirement? No, but you're asking me what's the evidence that he carried it. And that's the only evidence. The evidence that he had to present, and I believe if the inferences are considered in the light most favorable to the government, that it's sufficient. What about this exhibit? I think both defendants are challenging, right? Yes, Your Honor. At least partly not supported by either evidence in the record or admissible evidence. Well, honestly, I don't fully understand that because Frasie Maramontes Castellon testified that there was a phone number logged into his phone under the name Angel, and that that number belonged to the defendant's roommate. So the witness testified he correctly identified who that number went to, and that it was a number that he used to contact the defendant when he was looking for him, and it was a number that the defendant used to contact him. Counsel, I have another question about the chart. It looks a lot like those charts you occasionally see on Law and Order or The Wire, where the police, after a lot of careful work, lay out the whole structure of a conspiracy. But here, based on the evidence they had, you're showing a picture of this Murillo fellow on top of the chart as the big boss of the whole conspiracy. There has to be an evidentiary basis for everything the chart shows, and it's generally not supposed to be suggestive beyond what the evidence shows. It's supposed to just summarize the evidence, and I don't understand what the basis is here for showing Murillo Barriga as the big boss. But that's the way you drew the picture, which is suggestive indeed. It says this fellow's the big boss. If the court finds it suggestive, I accept the court's interpretation. How could it not be? He's represented as the big boss. There are two other people at the top. One of them is Renee Gomez, and I don't think there was any implication. No, she's shown a half inch lower. I mean, I'm looking at it right here. She's not shown at the top. She's shown a half inch lower and is only being in contact with one phone. Murillo Barriga is shown as being in the very top middle, with a whole web of contacts out, either directly or he's portrayed as the boss. Well, there's evidence to support that he was the boss, including the testimony of Amanda Cothran that's been referenced. Her testimony, and I want to correct something from the argument of counsel. Counsel argued that Amanda Cothran said that the in fact testified that her relationship ended just a couple of months before defendant Maria Barriga's arrest, which would have put it sometime in the late winter or early spring of 2011. So she testified as to what she saw going on, that he had this operation that he ran, he called his employees, his subordinates, his children or his sons, that they did what he wanted, that he brought in these large quantities of methamphetamine, posted guards at both doors, repackaged it into fist-sized packages which were sent out for distribution, that he had all of this unexplained income that he was spreading around. That was consistent with the testimony of Frasey Castellan-Maramontes who testified about how he was recruited into the conspiracy through this sort of seductive use of the money. And there's testimony specifically that everyone called him the jefe and that it was her observation that he was the boss and everyone understood that. So there are other people who are also identified in the diagram because their names come up during the case itself. There's Angel Veracampos. He was important because there was a delivery of a fairly large amount of methamphetamine made to the Arnold. And it may have been that the defendant Madrigal Galvan was also there by that time, although it's not completely clear. And that I believe occurred on May 11 of 2011 in which methamphetamine was obtained by Angel Veracampos from the residence of Jaime Magana and that went to 1209 Arnold specifically for a person named Martin. And then Jaime Magana was also the person whose vehicle was being driven by Frasey Castellan-Maramontes. Jaime Magana's name does not appear in that diagram, but I'm explaining one of the reasons why there are these other people that are referenced. So there was testimony from Frasey Castellan-Maramontes and from others from which it's reasonable to infer that the defendant was the boss. The district court concluded that the defendant was the boss and sentenced him in part based upon that conclusion. So I don't think that the chart itself is unduly suggestive based upon where the photograph of Mr. Maria Briga appears. Are there other questions about the chart itself? All right. Are there further questions about the firearms and the nexus to the storage unit? I mean I think the evidence about that is pretty clearly laid out in the briefs of counsel and I can't, no, I have no additional evidence to describe to the court. It is what it is. Well, let's talk about the law. What do we need? I mean, there's been a lot of questions raised to you. What does the law require in terms of the nexus? I mean, is it a factual inquiry? Factual inquiries, substantial connection. What's the best case? What's the best case? In terms of the... I think it's, I mean, I'd like to hear from you. I mean, is it thongsy? I think it's one of the cases and we look at whether or not it's the proximity, access and location and whether it's strategic in relation to the placement of the drug activities. Well, I think that the important point that I drew from the cases was that one of the basis to find a sufficient nexus between the defendant and the storage unit was whether there was a substantial connection. No, that's okay. And so I'm looking at... I mean, really, if you have to read the case here right now, then I think that... Well, I'm just, I'm looking back at the brief because I want to... It's the U.S. v. Morris and then it goes on to cite an additional case. But it said that the nexus is typically shown through evidence of exclusive control over the property or evidence that the defendant had a substantial connection to the location where contraband was seized. And so that case suggested that there was an either-or possibility and that the second possibility was that there was a substantial connection to the location where the contraband was seized. So this is a case where the jury is considering the totality of how Madrigal-Galvan and Rene Gomez operated together in this conspiracy. And they consider that in light of the expert testimony that was offered about how oftentimes women are employed or used in a conspiracy like this and considered it in light of what was actually in the storage unit and how the storage unit was being used. It wasn't really being used to store things that could be stored at home. It was being used to store the government contents, being used to store the merchandise, the stock for the conspiracy. There's no Frankerton instruction on why to be... I just, I honestly don't have a recollection of that. My vague recollection is that there was, but I don't have a specific recollection. Well, you think it should affect the result we reach if there were an open-ended instruction? I honestly don't know, Your Honor. My analysis of this was based upon what I described to the court, and I wish that I had a better recollection of the instructions that were offered, and I don't. Okay. Thank you. Thank you. Do you want a minute? In sum, I submit that the admission of the chart was an abuse of discretion, and that if this court finds that this matter should be reversed and the chart should not be and, you know, I understand Your Honor's concern, but as I will point out that as you look at all the testimony that the government cites, the fact is all of that testimony talks about what I believe is a different conspiracy. It's not the conspiracy alleged. All of the other individuals and even the address was a different time period. It did not involve the four alleged co-defendants. There's very little testimony identifying them. The only person that testified to Maria Briga being Hefe was that Amanda Cothran, and again, she didn't know the co-defendants, Rene Gomez and Madrigal Galvan. So if he was a Hefe, he wasn't a Hefe for those two, and Brent Johnston didn't know Madrigal, or I'm sorry, Brent Johnston had no connection with my client other than allegedly through Madrigal Galvan. So I would just ask the court to find that there was insufficient evidence on the conspiracy and that the chart was an abuse of discretion. Thank you. Thank you. Thank you all for your arguments today. That concludes our docket. The case is now submitted and we will be in recess for the day. Thank you.
judges: KLEINFELD, TASHIMA, MURGUIA